[No. 11041.   Department Two.   November 26, 1913.]

SPOKANE CASKET COMPANY, *Appellant*, v. ALBERT L. MITCHELL *et al.*, *Respondents.*[1]

DAMAGES—DUTY TO MINIMIZE—EVIDENCE. In an action for damages for the obstruction of a street leading to plaintiff's factory, the plaintiff cannot recover the amount of demurrage charges on a car load of lumber which could not be hauled to the factory, in the absence of any evidence of an attempt to minimize the damages by the removal and storage of the lumber, or of the reasonable expense of such storage.

DAMAGES—EVIDENCE—SUFFICIENCY. In such an action, plaintiff cannot recover for "overhead" charges, consisting of the salaries of employees, while the factory was closed down, where it appears that they were engaged in the performance of duties of some benefit to the plaintiff and the evidence did not segregate items which were not a loss, and there was no proof of loss of business or profits.

[1]Reported in 136 Pac. 481.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered February 13, 1912, upon granting a nonsuit, dismissing an action in tort, after a trial before the court and a jury. Affirmed.

*Tolman & King*, for appellant.

*Danson, Williams & Danson* (*George D. Lantz*, of counsel), for respondents.

MAIN, J.—The purpose of this action was to recover damages alleged to have been sustained by the unreasonable obstruction of a street.

During the year 1910, the defendants entered into a contract with the city of Spokane for the improvement of Water avenue and Huron street. This improvement consisted in the grading of the streets mentioned, the building of retaining walls, and the lowering of the sewer which had previously been laid. The work was begun during the latter part of the month of June or the early part of July of that year. The evidence does not show the exact date.

At and prior to this time, the plaintiff was a corporation engaged in the business of manufacturing caskets and jobbing undertaker's supplies. Its factory was located at 1610 to 1620, Water avenue, and abutted upon the proposed improvement. In its factory the plaintiff used considerable quantities of lumber and other supplies, which were transported to it by teams and wagons. In like manner, the products of the factory were conveyed to shipping points or places of delivery within the city. The only practical way for such travel and teaming was via Huron street and Water avenue. There was another way over Ontario street and Main avenue, but this was unsuited to heavy hauling.

There was evidence that the defendants, after having commenced the work upon the streets, did not prosecute it with reasonable diligence. From September 6th to the 13th, inclusive, the street was in such a condition that the plaintiff could not haul thereover the products of its factory. During

this time, only emergency orders were filled which could be taken out in light loads. The factory was closed because the storage room had been filled to its capacity. From the early part of September until the 15th of October, the plaintiff was unable to haul lumber to its factory, due to the condition of the streets. During the early part of September, a number of carloads of lumber were received in the freight yards of the Great Northern Railway Company, consigned to the plaintiff. Owing to the fact that the streets were in such a condition that this lumber could not be hauled to the factory, it was permitted to remain in the cars until the 15th day of October, for which delay in unloading a demurrage charge was paid in the sum of $206.

This was one of the items of damage which the plaintiff sought to recover. The evidence which was offered in support of this claim was extremely general. Giving the plaintiff the benefit of its most favorable construction, it went no further than an offer to show the amount of the demurrage charge paid. To the introduction of this evidence, an objection was interposed and sustained by the court.

On account of the closing down of the factory for the time already mentioned, damage is claimed for what is termed "overhead charges." This consisted of salaries of employees, interest, insurance and taxes. The employees whose salaries were included in the overhead charges were the teamster, shipping clerk, bookkeeper, superintendent, four or five men who were the foremen of different departments, and one traveling salesman. During the week that the factory was shut down, these employees were all at the factory. The teamster looked after his team and was working. The shipping clerk attended to some local deliveries in the city. The bookkeeper was in her office and earned her salary. The superintendent and the foremen took care of telegraphic and telephone orders which came in. The traveling salesman was out on the road taking orders the same as at any other time. There is no evidence

showing loss of business or profits. Orders which came in during this time were subsequently filled.

The cause was tried to the court and a jury. At the conclusion of the plaintiff's evidence, the defendant challenged the legal sufficiency thereof, and moved the court for judgment in its favor. This motion was granted, and judgment entered dismissing the action. The plaintiff appeals.

It is claimed that the evidence which was introduced was sufficient to carry the case to the jury on the question as to whether or not the streets were unreasonably or unnecessarily obstructed. It will be assumed, but not decided, that this position is correct.

The first question to be determined is whether or not the court committed error in not permitting the plaintiff to prove the demurrage charge. As already stated, the evidence was general and only sought to prove the demurrage as such. There was no evidence tendered showing what the reasonable charge for storage would have been during the time had the lumber been removed from the cars. Neither was there any showing as to what the additional cartage would have been.

There is a well known rule of law which requires a party to use reasonable efforts to minimize his damages. Had it been shown what the expense of storage and additional cartage would have been, and that these sums would not have exceeded the amount of the demurrage, a different question would be presented. It seems plain that demurrage, as such, could not be the correct measure of damages. Assume, for the sake of argument, that the consignee of a carload of flour permitted it to remain in the car for the period of six weeks, and that the demurrage would amount to the sum of $100, while the expense of removal and storage would have amounted to only $25. Can it be said, in such a case, that the demurrage would be the just measure of the damages sustained?

Relative to the matter of overhead charges: The evidence establishes the amount of these expenses per day and the number of days that the plant was idle. But it appears that

some of the items which were included in the overhead charges were not a loss to the appellant. The traveling man was working as usual. The teamster delivered light orders from time to time. And other employees were performing services which were of some benefit to the appellant. Even assuming that overhead charges may be recovered as damages, obviously where the evidence does not segregate from the total of such charges items included therein which were not a loss, there would not be sufficient evidence upon which a jury could base a verdict.

The judgment will be affirmed.

ELLIS, FULLERTON, and MORRIS, JJ., concur.