[No. 16993. Department Two. October 13, 1922.]

R. P. ARKLEY LUMBER COMPANY, *Respondent,* v. LYLE
S. VINCENT, *Appellant.*[1]

DAMAGES (12, 13)—SALES (156)—FAILURE TO DELIVER GOODS—
GROUNDS—NATURAL AND PROBABLE CONSEQUENCE OF BREACH OF CON-
TRACT: The breach of a contract of sale of lumber, in failing to ship
the kind of lumber called for, is a natural and proximate result of
damages by reason of demurrage, penalty, reconsignment and
switching charges, where the shipper knew its destination and that
rejection would probably result in demurrage and penalty charges.

DAMAGES (23, 115)—MITIGATION—BREACH OF CONTRACT—BURDEN
OF PROOF. The burden of proving that damages from breach of con-
tract to ship certain kinds of lumber, rejected and subjected to
railroad demurrage charges, could have been mitigated by unload-
ing the lumber and putting it in storage, rests upon the party
charged with responsibility for the breach; and the same is not
sustained, where it does not appear what the retransportation,
storage and reselling charges would have been, and the destination
point was two thousand miles from the place of business of the
buyer, who made diligent efforts to dispose of the lumber in the
cars.

Appeal from a judgment of the superior court for
King county, Smith, J., entered June 25, 1921, upon
findings in favor of the plaintiff, in an action on con-
tract, tried to the court. Affirmed.

*Dan Earle (Alexander, Bundy & Swale,* of counsel),
for appellant.

*Hayden, Langhorne & Metzger,* for respondent.

MAIN, J.—The purpose of this action was to recover
damages which accrued by reason of the breach of a
contract. The cause was tried to the court without a
jury, and resulted in findings of fact and conclusions

[1]Reported in 209 Pac. 690.

of law and a judgment sustaining the plaintiff's right to recover in the sum of $3,796.90. From this judgment, the defendant appeals.

The appellant, at Seattle, was engaged in the lumber and shingle brokerage business. The respondent was a corporation doing business in the city of Tacoma. On or about April 24, 1920, the appellant sold to the respondent 200,000 feet of 1 x 4 to 12 inch, number 3, common and better rough fir lumber. The lumber was to be shipped to the National Box Company at Chicago, Illinois, to which company it had been sold by the respondent. After the contract had been entered into, the appellant placed an order for the lumber with the Brace & Hergert Mill Company, at Seattle, which company was to manufacture it, load it upon cars and bill the same to the National Box Company. After the lumber was loaded upon the cars, the Brace & Hergert Company sent the bills of lading and the invoices to the appellant, and that company thereupon transmitted the bills of lading, together with the draft attached, to a bank in Tacoma, which presented them to the respondent. The drafts, as they were presented, were paid. Ten cars of lumber in all were shipped from time to time. When the lumber arrived at Chicago, six cars were rejected by the National Box Company and three were unloaded and held subject to adjustment. After the respondent was informed of the rejection, it immediately notified the appellant and requested that an inspection of the lumber be made. This was not acquiesced in by the appellant. Three of the cars rejected were placed in storage by the railroad company. The tenth car was shipped after notice to the appellant of the rejection and is not involved in this proceeding. In fact, the only question here to be determined is whether the demurrage, penalty, recon-

signment and switching charges upon two cars, in the sum of $1,079.08, can be recovered.

The appellant argues, first, that this is not a proper item of damages because it was not the natural and proximate result of the breach of the contract, and was not within the contemplation of the parties making the contract. The breach of the contract, as found by the trial court, consisted in failing to ship the kind of lumber which the contract called for. It may be admitted to be the rule that, where two parties make a contract which one of them breaks, the damages which the other party can recover are such as may be fairly and reasonably considered as the natural and proximate result of the breach, and such as were within the contemplation of the parties at the time the contract was made, and are the probable result of the breach of it. *Benjamin v. Puget Sound Commercial Co.*, 12 Wash. 476, 41 Pac. 166; *Ransberry v. North American Transp. & Trad. Co.*, 22 Wash. 476, 61 Pac. 154.

Whether the damages claimed come within this rule in any particular case depends upon the facts incident thereto. In this case, the appellant knew that the lumber was to be delivered to the National Box Company and that, in the ordinary course of affairs, it might be rejected as not meeting the requirements of the contract. It also knew that, if such rejection took place on account of the failure on its part to ship the kind of lumber agreed upon, there might, and probably would, arise as a result thereof a demurrage and penalty charge, which the railroad company requires when there is delay in unloading. The facts of this case bring it within the rule above stated.

It is argued, however, that the respondent did not use reasonable efforts to minimize the damage and, therefore, this item should not be allowed. The rule is

well settled that one damaged by breach of a contract shall do what he reasonably can to minimize the damage. It is said that, if the respondent had caused the lumber to be unloaded in Chicago and placed in storage, the damages would have been less. The answer to this argument is that the burden of proving that the damages claimed could have been prevented or mitigated by action on the part of the other party rests upon the one charged with the responsibility for the breach of the contract. Corpus Juris, vol. 17, p. 1025; *Campfield v. Sauer,* 189 Fed. 576.

The appellant seeks to avoid the force of this rule by stating that the storage charges on the three cars of lumber unloaded by the railroad company are shown in the evidence offered by the respondent. It is true that the storage charges as to those three cars appear in the evidence, but that does not meet the requirements as to the issue here presented. Had the two cars upon which the demurrage and penalty charges accrued been placed in storage by the respondent, when the lumber therein was thereafter re-sold, reloading and re-transportation charges would have necessarily accrued, and what these would have amounted to does not appear. But aside from this, the respondent's place of business was some two thousand miles from the destination of the lumber, and the appellant had refused to join in an inspection after it had notice of the rejection. It also may be reasonably inferred from the evidence that part of the charges complained of had accrued prior to the time that the respondent had notice of the rejection. The trial court found that, in view of the facts and circumstances of the case, the respondent acted in all respects as a reasonably careful and prudent person and made diligent efforts to dispose of the lumber in the cars. With this view, after a careful reading of the evidence, we are in accord.

The appellant relies upon the case of the *Spokane Casket Co. v. Mitchell,* 76 Wash. 425, 136 Pac. 481, as controlling. But we do not so view it. In that case the plaintiff, doing business in the city of Spokane, had purchased a shipment of lumber, and when it arrived at its destination in that city, was not unloaded from the cars, but was permitted to remain there during the time the demurrage charges accrued. The lumber was at its destination and was accepted by the plaintiff. The reason given for its failure to remove the lumber and transport it to its factory was that the defendant was then grading a street under contract with the city which was in front of and leading to the plaintiff's place of business, and for that reason the lumber could not be hauled. It was claimed that the improvement of the street was not prosecuted by the defendant with reasonable diligence. The plaintiff brought the action seeking to recover from the street contractor the damage which it sustained by reason of such unreasonable and unnecessary delay. One of the items sought to be recovered was demurrage. There was no evidence in that case as to what the expense of storage and additional cartage would have been, and it was there said that, under the facts of the case, demurrage as such would not be regarded as the correct measure of damages. That was a tort action, and even though the rule there stated were correct as applied to actions of that character, it should not be applied where the damages sought arise as the result of the breach of a contract and are such as may be said to be the natural and proximate result of such breach and such as were within the contemplation of the parties at the time the contract was made. In that case, as already stated, the lumber had reached its destination and had been accepted by the plaintiff. In the present case, the

lumber had reached its destination and had been rejected by the consignee.

The judgment is affirmed.

PARKER, C. J., HOLCOMB, MACKINTOSH, and HOVEY, JJ., concur.