[No. 20548.    Department Two.    August 5, 1927.]

RAPIDOL COMPANY, INCORPORATED, *Appellant,* v. HOWE COMPANY, INCORPORATED, *Respondent.*[1]

[1] DAMAGES (23, 25)—BREACH OF CONTRACT—MITIGATION OF LOSS. Upon defendant's breach of a contract giving plaintiff the exclusive right to distribute and sell its product in a certain territory, by defendant's sale and distribution of the product in the same territory through other channels or agents, the plaintiff's measure of damages is the amount of the loss it would have sustained if it had continued in the business which it had started, and not the total value of the business lost, where it appears that plaintiff could have minimized its damages by continuing a profitable business which it had established and which would not have been completely destroyed; and that defendant was obligated and willing to supply plaintiff with all the goods desired at a discount of thirty-five per cent so that plaintiff could not be undersold in said territory, and that its profits of fifteen per cent on new business would not have been reduced to exceed five per cent.

[2] SAME (74)—MEASURE—BREACH OF CONTRACT—LOSS OF PROSPECTIVE PROFITS. In such a case, there is no basis for plaintiff's recovery of loss of prospective profits, where, upon defendant's breach, the plaintiff, obligated by the contract not to deal in any competitive product, at once undertook to minimize his damages by distributing and selling a competitive product, and

[1]Reported in 258 Pac. 469.

there was nothing to show that the preliminary loss in introducing such product would not ultimately be recouped by a substantial profit before the contract period expires; the plaintiff, with the burden of showing the amount of such profit (presumably in its knowledge), having failed to offer any evidence on the subject.

[3] SAME (72)—BREACH OF CONTRACT—MEASURE OF DAMAGES—EXPENSES INCURRED. In such a case, the defendant's measure of damage is amount of disbursement fairly and properly expended in developing a market in the exclusive field given it by the contract.

Appeal from a judgment of the superior court for King county, Stern, J., entered November 1, 1926, upon findings in favor of the defendant, in an action for breach of contract, tried to the court. Reversed.

*Nelson R. Anderson* and *Reynolds, Ballinger & Hutson,* for appellant.

*Bausman, Oldham & Eggerman,* for respondent.

TOLMAN, J.—Appellant, a manufacturer of a hair dye known as Rapidol, by written contract, appointed respondent its distributing agent for the Pacific coast, giving it exclusive territory, fixing its discount, and requiring it to purchase a certain fixed minimum and to sell no competing liquid hair dye. After a few months of operations under the contract, trouble arose between the parties, and appellant, as plaintiff, brought this action to recover $9,580.42 for merchandise sold and delivered, and $25,000 as damages for an alleged breach of the contract on the part of respondent. Answering, the respondent admitted an indebtedness of $8,799.94 for merchandise delivered, but alleged a breach of the contract on the part of the plaintiff, and sought recovery of $14,243.33 expended in opening up a market in the territory covered by the contract, and $50,000 for loss of profits arising from the plaintiff's breach of the contract. The case was tried to the

court, findings and conclusions were made in favor of the defendant, and a judgment was entered offsetting defendant's expenses against the merchandise account, and allowing respondent $25,000 as damages for the breach of the contract. The plaintiff appeals.

Among other things, the trial court found:

"II. That in November, 1924, and for a long time prior thereto defendant, as plaintiff knew, was a corporation organized under the laws of the state of Washington, and engaged in the distribution at Seattle, Washington, San Francisco, California, and Portland, Oregon, of hair goods, hair nets, cosmetics and hair dyes, and for a long time had been successful distributors of hair dyes throughout the northwestern United States, had an efficient organization and had acquired a large business and valuable good will therein.

"III. That in November, 1924, the parties hereto executed a written contract by the terms of which defendant was awarded an exclusive sales agency for Rapidol hair dye manufactured by plaintiff, which contract provided in part as follows:

'(2)   The second party [defendant] is hereby made and constituted sales agent and distributor of the first party [plaintiff] with exclusive and sole right to sell and dispose of the products of the first party known as Rapidol in the following described territory, viz: the states of California, Oregon, Washington, Idaho, Montana, Colorado and Utah. . . .

'(6)   The first party agrees that, during the life of this agreement [a term of 5 years with option to renew for additional 5 years] it will not sell or cause any of its said products to be sold in the above described territory except through the second party and to refer all inquiries concerning its products from the above described territory that may be received by it through any source or by any means whatsoever to the second party; and further that it will not permit other dealers to sell or dispose of .its said products in said territory above described. . . .

18—144 WASH.

'(8)  .  .  .  First party shall furnish the second party from time to time with a reasonable quantity of literature and cuts for circularizing and promoting the sale of the products contemplated by this agreement, such literature to bear the name of the second party as sole distributor for the products of the first party.'

"IV.  And said contract further provided that 'if another jobber ships to our [defendant's] territory you [plaintiff] obligate yourselves to stop him even at the expense of not selling him any more Rapidol, and in failure to do so, we are to be allowed the discount.'  That defendant fully complied with the terms and conditions of said contract and immediately upon its execution, and continuously until the contract was breached, broken and repudiated by plaintiff, proceeded to and did use its best efforts in promotion of and in sales of plaintiff's product in said territory and arranged for and conducted demonstrations introducing Rapidol in the principal cities thereof, establishing an office in Los Angeles, California, to aid therein, and conducted intensive and extensive promotion of Rapidol throughout said territory and had already built up an extensive business therein.

"V.  That said contract further provided for the settlement for Rapidol shipped by plaintiff to defendant by 90 day trade acceptances.  That prior to June 1, 1925 plaintiff had shipped Rapidol to defendant in the aggregate amount of $9,259.96, from which amount defendant was entitled to credits in the amount of $344.52, reducing said amount to $8,914.85.  That trade acceptances were tendered, but were not accepted by plaintiff for the reason that plaintiff refused to allow said credits, and the non-delivery of acceptances and the non-payment of said amount, prior to the institution of this suit, was due to the fault of plaintiff and not to the fault of defendant.

"VI.  The plaintiff has not complied with all of the terms and conditions of said contract as alleged in the complaint.  Plaintiff failed to furnish defendant proper quantities of literature and color cards to aid defendant in promoting the sale of Rapidol.

"VII.  Defendant performed the terms and obligations of said contract imposed upon it and used its best

efforts in the promotion and sale of plaintiff's products and placed representatives in the large cities in said territory, arranged for demonstrations of plaintiff's product, as provided for in the contract, and performed said contract with respect to advertising. Defendant purchased from plaintiff prior to November 1, 1925 at least $18,800 in Rapidol, and its failure to purchase a larger amount thereof during said period was due solely to the fault of plaintiff.

"VIII. That immediately upon the execution of said contract, and continuously until on or about June 1, 1925, when said contract was breached and repudiated by plaintiff, defendant was proceeding diligently with the promotion of said product in a demonstration tour of said territory, and said demonstration tour was interrupted and discontinued on or about June 1, 1925, prior to its contemplated completion, and said interruption and termination was due solely to the fault of plaintiff.

"IX. That, in the promotion, demonstration and advertisement of Rapidol by defendant in said territory, prior to June 1, 1925, defendant incurred large expenses for the development thereof and to insure profitable and extensive distribution thereof. Said expenditures exceeded the amount of the merchandise shipped to defendant as aforesaid, namely, $8,914.85. No part of said expenditures have been repaid to defendant.

"X. In March, April, May and June, 1925, plaintiff breached and repudiated said contract which was entire and denied the validity thereof, and repeatedly asserted that it did not intend to be bound thereby or to continue to recognize the provisions of said contract which insured to defendant exclusive representation in said territory.

"XI. Plaintiff permitted said product to be sold in said territory through others than defendant, and permitted distributors, dealers and jobbers to sell and dispose thereof in said territory without defendant's consent.

"XII. Merchandise was shipped by a jobber from Chicago into the state of Colorado and, upon being notified thereof by defendant, plaintiff insisted that said

contract imposed no responsibility upon plaintiff by reason thereof. That in March, April and May plaintiff permitted the Marinello Company to represent itself as the general distributor of Rapidol at San Francisco, California, which was within defendant's territory, and permitted the Marinello Company to advertise, solicit and procure trade in, and the consumption of Rapidol in defendant's territory.

"XIII. Defendant has established specific instances of Rapidol having been shipped to the Marinello Company within defendant's territory and distributed and sold by the Marinello Co. therein in the period between March 1st, 1925, and June 1st, 1925.

"XIV. In April, 1925, and thereafter, plaintiff by letter, and in conversations in New York between its managing officers and defendant's president, insisted that said contract was unenforcible and did not obligate plaintiff to require the Marinello Company to respect the territory of defendant in the sale and distribution of Rapidol within defendant's territory through its San Francisco office and elsewhere.

"XV. That in April, 1925, plaintiff, in violation of its contract with defendant, disseminated advertising matter to the trade and procured full page advertising to appear in trade magazines, circulating throughout the United States and in defendant's territory, to the effect that the Marinello Company was general distributor of Rapidol and that Howe Company, Inc., was only West Coast distributor, and advertised and published in the trade therein that one of the Marinello Company's distributing offices for Rapidol was located in San Francisco, California, within defendant's territory.

"XVI. That the president of defendant company visited New York City on or about June 1, 1925, for the purpose of attempting to obtain plaintiff's agreement to respect, recognize and comply with said contract, but plaintiff's officers then and there reiterated their repudiation thereof and refused to be bound thereby, particularly with respect to protecting defendant against the Marinello Company, and proposed to defendant that a new contract be substituted for the contract sued upon in this action. That defendant de-

clined to accept plaintiff's proposed substitution, and thereafter plaintiff refused continuously to ship to defendant any more merchandise under the terms of the contract and refused to ship any merchandise whatsoever, except upon a C. O. D. basis.

"XVII. That said repudiation by plaintiff has never been retracted. Defendant carried no other liquid hair coloring, other than expressly permitted by said contract, for distribution or sale until the latter part of October, 1925, and long after the repeated breaches and repudiation of said contract by plaintiff, but at all times was ready, able and willing to devote itself exclusively to the requirements of said contract to the promotion and sale of Rapidol, and would and could have done so except for plaintiff's breaches as aforesaid."

Under our familiar rule, the findings quoted must stand. After a diligent consideration of the great maze of conflicting testimony, we are satisfied that as to no substantial fact can it be said that the evidence preponderates against the findings.

[1] The trial court further found:

"XVIII. That, as a result of such breaches and repudiation, plaintiff destroyed and prostrated defendant's business in Rapidol and ruined the trade which defendant had developed, and was developing, in reliance upon said contract and as a result of the expenditures hereinbefore detailed. That, in consideration of all the existing conditions, defendant could and would have sold an amount of Rapidol during the term of said contract at least equal to the minimum shipments therein required and its net profits, over and above expenses of every kind and over and above the promotion expenses above referred to, would have been not less than $25,000. That its net profits as aforesaid, based upon $180,000 in purchases, would have exceeded 15% and, in the aggregate, would have greatly exceeded the sum of $25,000."

In this finding, we are satisfied that the trial court went beyond what the evidence justifies, and drew in-

ferences and conclusions of fact which the record fails to substantiate.

The first conclusion is that, as the result of appellant's breach, respondent's business in Rapidol was ruined and destroyed. The contract gave to respondent certain exclusive territory. The exclusive feature was destroyed, but respondent was in no wise prevented from buying all the Rapidol it might require at a discount of thirty-three and one-third per cent (in that respect losing only the additional five per cent provided by the contract) and no absolute necessity appears for a destruction of its business. With full opportunity to provide itself with all of the Rapidol its trade might require, there was no reason why it should not continue to sell its regular trade, and all new trade it might develop, at a loss of only the additional five per cent given it by the contract. True, its exclusive right in the territory was gone, but, as the price of Rapidol to the consumer was fixed by the manufacturer, no one could undersell it, and, it being a pioneer in the territory, the assumption that it would lose all of its trade seems to us wholly unwarranted.

While it may be assumed that, because of the loss of the exclusive feature, respondent would not be able to increase its trade, to the extent it otherwise might have done with the consumer compelled to buy of it only, yet there is nothing in the record which will warrant us in saying with any certainty that it could not increase its trade in competition with others, because the territory was largely in a virgin state at the time of the breach, respondent was to some extent already established in it, and no reason appears why respondent, with diligent effort, should not have obtained a fair share of all of the trade of the territory which might thereafter be developed.

[2]  There is still another, and perhaps a more im-

portant and complete, reason why the trial court was wrong as to the measure of damages which it applied. The contract by its terms bound respondent to sell no competing dye (certain dyes were exempted as being non-competing) and when the contract was breached by the appellant, respondent was left free to minimize its damages by selling any and all other dyes as it might desire. Realizing this, respondent, as soon as it deemed the contract breached, undertook to develop and place on the market a competing dye known as Dyart. True, the evidence shows that, during the few months preceding the trial, when this dye was available, it was marketed at a loss; but, so was Rapidol. Respondent, in about the same length of time, expended ninety-five per cent of every dollar that it received from the sale of Rapidol in the conduct of the business of selling it, and had left but five per cent of the sale price with which to pay for the goods sold. Truly a heavy loss for the time being, but respondent justifies it on the theory that, with the development of the territory, this loss would have been absorbed long before the five-year contract expired, and a profit of $69,000 would have remained. There is nothing in the record to justify a finding that the same thing might not be applicable to Dyart, and that the early losses, due to its introduction in a new field, be fully recouped and a substantial profit realized before the contract period expires.

Respondent has been quick to see that the appellant is defenseless in that respect, and has extolled Rapidol to the skies as the best hair dye on the market; but, in its effort to sell Dyart, it is making identically the same claims for it, and there is nothing in the record from which we can determine whether or no there is justification for either claim. That question will have to be left to the ultimate consumer.

It follows that we cannot say that Rapidol is the only marketable dye, or that no other dye can be marketed as profitably. It follows, also, that there is here no basis for the recovery for loss of prospective profits.

If we accept as the governing rule what is said by the supreme court of Oregon in *Blagen v. Thompson,* 23 Ore. 239, 31 Pac. 647, (the rule on which respondent seems largely to rely), still there is no basis for recovery. The Oregon court there said:

"The rule that damages which are uncertain or contingent cannot be recovered does not embrace an uncertainty as to the value of the benefit or gain to be derived from the performance of the contract, but an uncertainty or contingency as to whether such gain or benefit would be derived at all. It only applies to such damages as are not the certain result of the breach, and not to such as are the certain result, but uncertain in amount."

It appearing that respondent, as soon as released from the burden of the contract, sought another dye to take the place of Rapidol, which, of course, it was bound to do in order to minimize the damages, and it failing to appear what the new dye will produce in profits, over the unexpired term of the contract, there is no basis on which a loss of profits can be determined. The question of the sale of the new dye having been introduced, the burden was upon the respondent to show what would be the result of such sales over the contract period, as presumably knowledge of what might result was peculiarly its own. Without evidence upon that point, the whole question of loss of profits would be a subject for speculation only.

[3] But we think respondent is still entitled to recover for the disbursements fairly and properly expended in good faith in developing a market in the exclusive field given it by the contract. After con-

sidering the objections made by appellant to certain items, we think the evidence justifies an allowance of $13,237.52 on this account. The trial court found that there was due to appellant for merchandise $8,914.85, and the difference of $4,322.67 must be the amount of respondent's recovery.

Reversed, with directions to enter judgment accordingly.

MACKINTOSH, C. J., HOLCOMB, PARKER, and FRENCH, JJ., concur.