[No. 22220. *En Banc.* January 8, 1931.]

NATIONAL GROCERY COMPANY, *Respondent*, v. A. SANTAELLA & COMPANY, *Appellant*.[1]

[1]Reported in 295 Pac. 128.

*Grinstead, Laube, Laughlin & Litchy,* for appellant.
*Bronson, Jones & Bronson,* for respondent.

BEALS, J.—Plaintiff, a wholesale dealer in groceries, including tobacco, brought this action against defendant, an eastern manufacturer, to recover damages for breach of contract for the sale of cigars; alleging that, for several years prior to 1926, plaintiff had enjoyed an exclusive contract for the purchase and distribution of defendant's cigars in the state of Washington and adjacent territory; that the practice of the parties, under this arrangement, was for plaintiff to place standing orders with defendant for certain of its brands, which standing orders were, from time to time, supplemented by special orders; that September 7, 1926, defendant advised plaintiff by letter that, on October 5, 1926, the business relations existing between the parties would be terminated, and that defendant would make other arrangements for the distribution of its cigars in the territory formerly served by plaintiff; that defendant failed to ship any cigars to plaintiff after September 1, 1926; and that defendant failed to ship to plaintiff a large quantity of cigars which should have been shipped prior to October 5 under the standing orders, and a considerable quantity which should have been shipped prior to the date last mentioned under special orders. Plaintiff alleged that its profits upon the sale of these cigars, had they been received, would have amounted to $1,982.52, for which amount, together with interest, plaintiff asked for judgment.

Defendant having answered plaintiff's complaint, denying the material allegations thereof, the action proceeded to trial before the court sitting without a jury, the court entering findings of fact and conclusions of law in plaintiff's favor, and granting plaintiff

judgment in the sum of $1,948.40. From this judgment, defendant appeals.

Appellant contends that the standing orders as placed with appellant by respondent did not constitute, in law, binding contracts, save in so far as such contracts were consummated by deliveries made and accepted from time to time pursuant thereto. We do not find in the record testimony as to any agreed duration of these standing orders, and, following the case of *Robbins v. Seattle Peerless Motor Company,* 148 Wash. 197, 268 Pac. 594, we hold that the contract between the parties to this action, in so far as the standing orders are concerned, was terminable at will by either party. The general doctrine is stated in 13 C. J., p. 604, as follows:

"The rule seems to be that, there being no time limit specified in a contract of this kind, it is subject to cancellation at the will of either party."

Respondent apparently does not contend that appellant could not, by notice, terminate the business relations between the parties as of October 5, in accordance with its letter of September 7; but contends that appellant should have filled the special orders which had been placed with it for delivery prior to October 5, and such standing orders as accrued prior to that date. It is not denied that respondent's exclusive agency had been terminated prior to September 1, 1926, by notice from appellant. The pertinent portion of appellant's letter of September 7 reads as follows:

"This is to advise you that, commencing October 5, 1926, and thenceforward, we will make other arrangements for the distribution of all our brands of cigars in the above mentioned territory."

Granting that appellant had the right to terminate the dealings between the parties at any time, it would

seem that, by this notice, appellant impliedly rati-
fied respondent's standing and special orders for
cigars up to the date fixed by appellant, in its letter,
for the end of the dealings between the parties. Our
opinion concerning other matters hereinafter men-
tioned renders it unnecessary to definitely decide this
question; but we will assume, for the purposes of this
opinion, that appellant was obligated to continue ship-
ping cigars in accordance with the standing and special
orders up to October 5, 1926.

■ The trial court, after finding the quantities of
cigars which appellant should have sent to respondent
prior to October 5, found that these cigars would have
been resold by respondent in the regular course of its
business at fixed standard prices, and that the han-
dling and disposition of these cigars would not have
caused respondent any additional expense in the oper-
ation of its tobacco department over and above the
cost of the cigars, as specified in the orders, plus
freight, insurance and some other charges. The court
found that respondent would have realized a profit
from the sale of these cigars in the sum for which it
granted respondent judgment.

It appears from the testimony that respondent had
on hand, during the month of September, a consider-
able quantity of the cigars manufactured by appellant,
and that respondent still had in its possession a quan-
tity of these cigars as late as the first of January,
1927. It is also true that respondent promptly pro-
tected itself by arranging with another manufacturer
of cigars to handle its product, and sold such sub-
stituted brands of cigars to its customers when possi-
ble. We are unable to find from the record that, by
reason of appellant's failure to ship cigars to re-
spondent after September 1st, respondent lost a single
sale of cigars; or, in the course of its fall business,

sold one box less, all brands included, than it would have sold had appellant continued shipping up to October 5. Neither does it appear that respondent realized any less profit from the sale of the brands which it purchased in lieu of appellant's product than would have accrued to it had it continued to receive cigars from appellant. Respondent's officers testified that they would have sold, in the ordinary course of their business, all the cigars which they would have received from appellant had appellant filled respondent's orders up to October 5; but appellant contends that such testimony is not sufficient to support the judgment rendered in respondent's favor.

In the case of *Rapidol Company v. Howe Company,* 144 Wash. 543, 258 Pac. 469, an action brought by a foreign manufacturer against the local distributor (the reverse of the situation here presented) for the recovery of damages for breach of a contract whereby the defendant was to purchase the plaintiff's product and dispose of the same at retail within a certain specified territory, the defendant admitted a considerable indebtedness for merchandise delivered, but alleged a breach of the contract by the plaintiff and sought recovery of a large sum, by way of damages, both for money expended in opening a market in the territory covered by the contract, and for loss of profits because of plaintiff's alleged breach of the agreement. The trial court entered judgment in favor of the defendant, allowing defendant a large sum by way of damages. The product which was the subject matter of the contract was a hair dye, and it appeared that there were other similar dyes available the right to purchase one of which was procured by the defendant when its contract with the plaintiff was terminated, the defendant having thereafter pushed the sale of the

new product as vigorously as possible. In the course of the opinion, this court said:

"It appearing that respondent, as soon as released from the burden of the contract, sought another dye to take the place of Rapidol, which, of course, it was bound to do in order to minimize the damages, and it failing to appear what the new dye will produce in profits, over the unexpired term of the contract, there is no basis on which a loss of profits can be determined. The question of the sale of the new dye having been introduced, the burden was upon the respondent to show what would be the result of such sales over the contract period, as presumably knowledge of what might result was peculiarly its own. Without evidence upon that point, the whole question of loss of profits would be a subject for speculation only."

This case is especially in point here. As stated by the court in the paragraph above quoted, it was evident that information as to what the result of the sales of the new product had been and would be was peculiarly within the possession of the defendant, upon whom rested the burden of proving its alleged damages for breach of the contract; and that, in the absence of such evidence, "the whole question of loss of profits would be a subject for speculation only." Practically the same situation is presented in the case at bar. In its supplemental brief, respondent states that,

"After the appellant refused to fulfill its contract, respondent took on the Henry the Fourth line of cigars in place of Optimos,"

which statement is amply supported by the testimony. Respondent's sales manager, testifying as a witness on behalf of respondent, on cross-examination stated that respondent, during the month of October, handled a number of brands of cigars which it had not before sold, and that respondent pushed the sales of these brands actively during the fall of 1926. There is com-

petent testimony in the record to the effect that, had respondent received from appellant the cigars called for by its orders which accrued during the month of September, it would have sold them to its retail trade and realized a profit therefrom; but we are unable to find in the record any testimony to the effect that, by reason of appellant's failure to ship these cigars, respondent sold any less cigars than it would have sold had its orders been filled by appellant; or that, from the cigars which it did sell, it realized any less profit than it would have realized from the handling of appellant's product.

Respondent contends that the burden rested upon appellant to plead and prove any such matters in mitigation of respondent's damage, and cites, in support of its contention, several decisions of this court. In the first of these, *Star Publishing Co. v. Knosher & Co.*, 62 Wash. 215, 113 Pac. 569, a judgment for damages in favor of a publishing company for breach of a contract to purchase advertising space was upheld. The defendant, who was the appellant here, contended that, even though it breached the contract, its liability was limited to the profit that would have resulted to the publishing company from performance of the contract. It was held that the appellant's position was untenable, first, because the contract itself established the measure of damages to be applied in case of the breach thereof; and second, that, even though it should be held that the profits of the contract were the measure of the appellant's liability, the burden rested upon appellant, as in contracts for personal services, to show any facts existing in mitigation of damages, the contract price being *prima facie* the measure of damages.

A contract for the sale of merchandise bought to be resold differs very materially from a contract for

personal services or a contract for the purchase of advertising space in a newspaper. In the case at bar it was for respondent to prove its damages. By cross-examination of respondent's own witnesses, facts were disclosed which clearly indicated that the amount of gross profit which respondent would have received on the resale of the cigars manufactured by appellant was not the only element to be considered in determining respondent's damages. The case cited is therefore not in point here.

In the case of *Arkley Lumber Co. v. Vincent,* 121 Wash. 512, 209 Pac. 690, also cited by respondent, the facts were so entirely different from those here presented that the language of the court which respondent contends supports its position is entirely inapplicable. That was an action to recover damages suffered by way of demurrage, switching charges, etc., upon two cars of lumber, rejected by an eastern consignee because not complying with specifications. The defendant, appellant here, argued that the plaintiff had not used reasonable efforts to minimize the damage; and this court, answering this contention, stated that the burden of proving that the damages claimed could have been prevented or mitigated rested upon the party charged with the responsibility of the breach of the contract. In this case, also, the matters at issue were so utterly different from those here presented as to deprive the decision of all point.

In the recent case of *Epley v. Hunter,* 154 Wash. 163, 281 Pac. 327, an action against a sheriff and others for wrongful attachment of personal property, this court reversed the judgment of the trial court, entered in favor of the defendants notwithstanding the verdict of a jury in plaintiff's favor, and remanded the action for further proceedings. In the course of the opinion, this court stated that certain sums realized by the

plaintiff from a lease and from the sale of certain personal property should be reflected in the verdict, in so far as plaintiff thereby minimized his damages; but that the wrongful act of the sheriff in seizing the property, and the fact that the business had been profitable having been sufficiently established, the extent of the mitigation of the damages would seem to be matters of defense. The opinion also states that these matters were shown by respondents as part of their defense. The question before this court was whether or not there had been testimony upon any of the issues raised sufficient to support a verdict in the plaintiff's favor. The defendant had introduced testimony in mitigation of damages, which was, of course, entirely proper. No question was presented to this court concerning this testimony or the burden of proof in connection therewith; the question before this court to be determined being, as above stated, whether or not there was testimony in the record sufficient to go to the jury upon any of the items of damage relied upon by the plaintiff. The language of the opinion relied upon by respondent is not controlling upon the questions here submitted.

Considering another phase of the evidence in the case last cited, that of damages suffered by the plaintiff by reason of injuries to his personal property while the same was in possession of the sheriff, this court said:

"As to damages to the personal property while in possession of the sheriff and failure to redeliver, which may be treated together, we find some general and not very satisfactory testimony as to the value of the personal property as a whole when seized by the sheriff, but no testimony of any character from which the jury could find what specific parts thereof were damaged, what specific parts thereof, if any, were not tendered or returned, or the lessened value of the whole which

was occasioned by damage or failure to return. In other words, to prove damages in such a case as this, there must either be evidence of the value of the whole, when taken, and evidence of the value of what was returned, when returned, which, deducted from the first amount, would show the loss; or, there must be evidence of the loss or damage to specific parts of the whole, together with evidence of the value of the parts lost and the extent of the lessened value of the parts damaged. We find no testimony tending to establish any loss to appellant under either rule. Indeed, it appears that on the day appellant paid the judgments in the attachment suits, he gave a bill of sale covering apparently all, or substantially all, of this personal property to one Enbody, which recites a consideration of ten dollars and other good and valuable considerations. So far as we can find from the abstract, no testimony was given that appellant received less for the property by reason of what the sheriff had done or permitted. However wrongful the sheriff's acts, there can be recovery under the rule in this state only for the monetary loss suffered, and there being no evidence of such a loss or the extent thereof, there was nothing to go to the jury on this issue.''

This portion of the opinion supports appellant's contention that, in order to justify a judgment for damages, the evidence must not only show facts which support a finding that a legal wrong has been committed by the person sought to be held, but must show that some actual damage was suffered by reason of such wrong, and must afford some basis by which the amount of such damage may be determined.

In the case at bar, information as to its sales and its profits was in the exclusive possession of respondent. The fact that other brands of cigars were sold during the fall of 1926 appeared from testimony elicited by appellant on cross-examination of respondent's witnesses. This being the situation, the burden rested upon respondent to definitely prove its damages and

show, for example, that, by reason of appellant's failure to deliver cigars ordered for shipment during the month of September, respondent had lost sales, to its damage in a certain amount; or that respondent, in handling a substituted product, had been required to pay more for the product or sell the same at a lower price, thereby receiving less profit than it would have earned had appellant filled respondent's orders up to October 5.

We hold that, in proving no more than what its gross profit would have been had it received the cigars which it ordered from appellant, respondent failed to establish facts sufficiently definite to support the judgment for damages rendered in its favor.

For the purposes of this opinion we have assumed, without deciding, that the evidence supports the finding of the trial court to the effect that respondent would have handled the cigars which it contends it should have received from appellant without expense to itself, and that no reduction should have been made by the trial court on account of overhead, sales expense, etc.

For the reasons stated, the judgment appealed from is reversed, with instructions to the trial court to dismiss the action.

MITCHELL, C. J., MILLARD, MAIN, TOLMAN, BEELER, and PARKER, JJ., concur.

HOLCOMB, J. (dissenting)—In my opinion, the evidence sustained the findings of the trial court as to damages for loss of profits on sales that could have been made up to October 5, 1926.