[No. 8581. Department Two. May 19, 1910.]

PHOENIX PACKING COMPANY, *Appellant*, v. HUMPHREY-BALL COMPANY, *Respondent*.[1]

SALES—ACTION FOR PRICE—PERFORMANCE BY VENDOR—NECESSITY—STATUTES—CONSTRUCTION. Civil Code of California, § 1440, providing that, if a party to a contract gives notice that he will not perform the same, the other party is entitled to enforce the same without previously performing any of the conditions on his part, has no application where the vendee gave notice of cancellation of a sale, and the vendor refused to accept the cancellation and gave notice that the goods would be shipped as per contract, after which no further communications passed between the parties.

SALES—WHAT LAW GOVERNS—PLACE OF DELIVERY—CONSTRUCTION. Where plaintiffs, doing business at San Francisco, offered, through their broker at Spokane, to sell a car of raisins to the defendants, doing business at Spokane, f. o. b. California, with right to inspect the goods on arrival, terms cash with documents attached, and the offer was accepted through the broker at Spokane, where the accepted contract was afterwards delivered by the broker, the contract is governed by the laws of Washington where delivery of the goods was to be made; especially in view of testimony explaining the expression "terms—cash with documents attached" to mean that the goods were to be shipped with shipping receipt attached to the draft, and not to be delivered and released by the railroad company until paid for.

SAME—"F. O. B." The terms "f. o. b. California" simply means that the purchaser was to pay the freight from California to the place of destination.

EVIDENCE—PAROL—TO EXPLAIN WRITING. Parol evidence is admissible to explain the expression "terms—cash with documents attached," used in a contract for the sale of goods to be shipped by the seller.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered April 5, 1909, in favor of the defendant, after a trial on the merits before the court without a jury, in an action on contract. Affirmed.

[1]Reported in 108 Pac. 952.

*E. C. Macdonald,* for appellant.

*R. E. Porterfield,* for respondent.

DUNBAR, J.—On the 15th day of June, 1907, the respondent ordered at Spokane, Washington, through the appellant's broker, to be shipped at a certain time, various amounts and kinds of raisins, at stipulated prices amounting in the total to $2,152.50. This order was afterwards accepted by the appellant at its office in San Francisco. The essential part of the contract is as follows:

"Spokane, June 15, 1907.

"We have this day bought from Phoenix Packing Co., of San Francisco, California, through their broker, M. Johnson-Lieber Co., of Spokane, Washington, to be shipped first half of November, or as soon thereafter as goods can be packed, the following . . . These prices are f. o. b. California, Fresno, less 1½ per cent cash discount. Terms—Cash with documents attached. When buyer requests the privilege of examination before payment of draft, routing to rest with seller. Such examination to be made within three days of the arrival of the goods, otherwise buyer waives all rights of rejection or claim as to quality."

There are other provisions in the contract, but their consideration is not necessary to a determination of this case. The contract was accepted by the appellant and returned to appellant's agents in Spokane, who, in course of time, delivered it to the respondent. On the 10th day of September, 1907, the respondent wrote the appellant, ordering a cancellation of said contract, and stating that it would not accept the shipment. The appellant wrote back to the respondent that it would not agree to the cancellation of the contract, but that it would make the shipment according to the original contract. Nothing further was done in the premises until the commencement of this action for the sum of $350.14, which sum it is alleged is the difference between the contract price and the market value of said goods at the time they were to have been shipped under the contract at the place of delivery—Fresno, California.

The respondent admitted the execution of the contract and the attempted cancellation of the same, but denied that appellant had been damaged in any sum. The respondent also interposed a separate and affirmative defense, to the effect that the respondent had sought to countermand and cancel said contract, and that appellant, on or about the 16th day of September, 1907, notified respondent that it refused to accept any cancellation; that it would ship such goods at the specified time and expected the respondent would accept delivery of the same; that the respondent relied on that notification of the appellant and made no further effort to cancel said contract or countermand said order, and that said appellant failed, neglected, and refused to ship said goods and carry out its contract, against defendant's will. This affirmative answer was denied by the appellant. The appellant pleaded and proved certain sections of the Civil Code of the state of California, among others § 1440, which is as follows:

"If a party to an obligation gives notice to another before the latter is in default that he will not perform the same upon his part, and does not retract such notice before the time at which performance on his part is due, such other party is entitled to enforce the obligation without previously performing any conditions on his part in favor of the former party."

But this is not the kind of a case, it seems to us, where the section quoted is applicable; for here, notwithstanding the notification on the part of the respondent that it desired to cancel the order, the application for cancellation was positively refused by the appellant, and it notified the respondent to that effect. The last letter written by the appellant to the respondent contains this statement:

"We note that you state that you will positively not accept our shipment of raisins under any consideration, and that your letter is to serve notice of cancellation of contract. Now, gentlemen, you know that it took two to make the contract and we believe that it takes two to cancel it. We shall

make shipment of this car of raisins on contract time and most certainly shall expect you to take delivery of the same."

And in its letter to its own agent, on the same day, occurs the following:

"We have had a letter from Humphrey-Ball in which they inform us that they will not under any consideration accept delivery of the car of raisins. In other words, that they intend to repudiate their contract. We wrote them this morning, and beg to enclose copy of the letter. We wish to state now that we shall insist that they take delivery of this car. We did not care to write them too strong a letter at this time, but for your information we wish to state that we intend to see that they take this car or pay for it, no matter how long it takes us or how much it costs. We are not in the habit of having a firm give us an order, sign a contract, and because the price goes down a little, say that they do not wish the goods."

No further communication was had between the parties until the commencement of this action. There was proof of the value of the goods in California at the time they would have been shipped under the contract, but there was no proof offered as to the value of the goods in the state of Washington.

The principal contention of the appellant is that the court erred in not holding that the contract sued on was made in California and should be construed by the laws of that state; and in holding that the law of Washington alone should be considered in measuring the damages, if any, sustained by appellant. It is also alleged that the court erred in permitting the introduction of evidence as to the custom of merchants in shipping goods, and evidence as to the construction of the contract. It is the contention of the appellant that the law of California governs, and that the market value of the goods in California determines the measure of damages to be allowed. In this we think the appellant is mistaken. Of course, as a general proposition, the rights of parties are determined by the law of the place where the contracts are entered into, in the absence of an agreement to the contrary.

So that it becomes a pertinent question, where this contract was entered into, or where the minds of the parties met in relation to the subject and terms of the contract. The same was either made at Spokane when it was signed by respondent, or it was made at Spokane when it was sent back and delivered to the respondent by appellant's agent. It had been in the possession of the appellant from the time of signing by respondent, until delivered to it by appellant through its agent, after its acceptance by the appellant; and if it be conceded that the minds of the parties did not meet at the time of the signing at Spokane, by reason of the lack of authority on the part of the agent to bind the appellant, the time when their minds did meet was when the accepted contract was delivered to respondent at Spokane by appellant's agent.

Appellant cites many authorities in support of the doctrine that, if a person in one state mails an order for goods to a person in another state, and the person in the other state accepts the same and mails his acceptance to the person sending the proposition, the contract is to be governed by the law of the state where it is so accepted. But these cases do not apply to the case under consideration, for the offer in the first instance was made in Spokane by the agents of the appellant. The acceptance of that offer was also made here, notwithstanding the appellant was doing business in California, for the acceptance was made not through the mail in answer to an offer made, but through the agent of the appellant, resident at Spokane. The contract was delivered at Spokane. The case cited from this court—*Izett v. Stetson & Post Mill Co.*, 22 Wash. 300, 60 Pac. 1128, is not controlling. That was a case where sawlogs had been delivered to the purchaser under a contract of sale providing for payment when they should be scaled, and it was held that the title to the logs passed to the purchaser, and he became liable for the value of the logs in case they should be lost through his.

negligence prior to their being scaled.   That case involved the proposition so frequently discussed that, where it appears that there has been a complete delivery of the property in accordance with the terms of the sale, the title passes, although there remains something to be done in order to ascertain the total value of the goods at the rates specified in the contract.   And that was the basis of the decision in that case, following the doctrine announced in *Hatch v. Standard Oil Co.*, 100 U. S. 124.

But, outside of any extraneous testimony, the contract itself shows that the title of the goods had not passed to the respondent, and would not have passed to it if they had been shipped at Fresno, California; because, under the contract, the buyer had the right to examine the goods before he was compelled to accept them, and was given three days to exercise such right.   All that was meant by the expression "these prices are f. o. b California," was that the purchaser was to pay the freight from California to the place of destination.   The rule applicable to the circumstances of this case is announced on page 1339, subd. 2, of 22 Am. & Eng. Ency. Law (2d ed.), as follows:

"The place of sale of goods is the place of delivery, where the sale is completed by delivery.   Thus, if a person residing in one state orders goods of one residing in another state, who there delivers the goods ordered to a carrier for the purchaser, the contract is deemed to be made there, in the absence of an agreement to the contrary.   But if the parties agreed that the goods should be delivered by the carrier as the seller's agent in the state of the purchaser, the law of the latter state will govern."

Under the undisputed testimony in this case and under the terms of the contract, the goods were to be considered the goods of the seller until they were purchased and paid for in Spokane by the respondent.   The expression in the contract "terms—cash with documents attached" was explained by the testimony, and such explanation becomes important in the

26—58 Wash.

determination of this cause.  Mr. Amos, who was the agent for the appellant and the man who sold the goods to the respondent, in answer to the question, "I will ask you what that sentence means; what is the technical meaning of that phrase?" (the question referring to the phrase "terms—cash with documents attached,") said:

"It means that the goods are shipped, the shipping receipt and invoice to be attached to the draft.   And afterwards it passes through the bank for collection; the goods thereafter to be paid for before the draft will be delivered by the bank; and the bill of lading would have to be delivered to the railroad before they would deliver the goods.   Q. In other words, the goods would not be delivered until they were paid for? A. They would not be released by the railroad until paid for.   Q. They would not be delivered to the Humphrey-Ball Company until paid for?  Is that the fact?  A. Yes, sir."

The witness further testified that the bill of lading was attached to the draft sent to the bank, and was not delivered until the draft was paid; that the Humphrey-Ball Company could not get the goods until they were paid for, and that the goods were to be shipped under this contract to the Phoenix Packing Company instead of to the respondent. The witness D. J. O'Callahan testified to exactly the same interpretation of the contract, and stated that the purchaser could not touch the goods; they remained the property of the seller until paid for.   To the same effect was the testimony of F. M. Ball.   So that it seems plain that this case falls squarely within the rule just cited from 22 Am. & Eng. Ency. Law, that the contract should be construed with reference to the laws of the state of Washington; and there being no proof of any damages under the laws of the state of Washington, the court was justified in arriving at the conclusion at which it did.

It is contended by the appellant that the court erred in admitting the testimony as to the construction of this phrase in the contract.   But this was an expression which is plainly open to explanation.   The explanation offered had no ten-

dency to dispute the terms of the contract, but simply to
determine its meaning.   It was therefore admissible.

The judgment of the court will be affirmed.

RUDKIN, C. J., PARKER, CROW, and MOUNT, JJ., concur.