[No. 29863. Department One. July 12, 1946.]

NORM ADVERTISING, INC., *Appellant,* v. MONROE STREET LUMBER COMPANY, *Respondent.*[1]

[1] Reported in 171 P. (2d) 177.

*Harrison M. Berkey,* for appellant.

*Charles W. Gillespie,* for respondent.

STEINERT, J.—This was an action for breach of a contract wherein the defendant agreed to pay to the plaintiff a specified sum of money, in installments, for a series of copyrighted pictorial illustrations together with certain advertising matter, all to be supplied periodically by the plaintiff for use by the defendant during a term of one year. Upon joinder of issue, the cause was tried to the court without a jury. At the conclusion of plaintiff's evidence, the defendant moved for a dismissal of the action. The motion was denied. The defendant thereupon, without producing any evidence of its own, rested its case. The court rendered its decision in favor of the defendant upon the evidence as adduced, and thereafter made findings of fact from which it concluded that the action should be dismissed with prejudice. Judgment was entered accordingly and plaintiff appealed.

Appellant, Norm Advertising, Inc., is a New York corporation and, as such, conducts an advertising business which ramifies throughout the several states. Under its method of operation, certain of its representatives from time to time

make surveys of various types of business, and, with that information, its artists prepare cartoons or pictorial illustrations suitable and intended to attract the attention of the public to the merchandise sold by concerns engaged in the kind of business so surveyed. These pictorial illustrations, when prepared, are copyrighted by the appellant. From the original drawings prepared by appellant's artists, "zincs" are made, and from these zincs impressions are produced in the form of mats for prospective advertising uses by the various merchants who may subscribe for appellant's service.

Having made this preliminary preparation, appellant sends its traveling salesmen throughout the country to call upon mercantile concerns engaged in businesses of the kinds previously surveyed, with the view of interesting such concerns in the service which the appellant has to offer. This service contemplates not only the periodic delivery of a specified number of such pictorial illustrations by the appellant to the subscriber, for use by the latter in various advertising media, but also the periodic preparation and delivery, by appellant to the subscriber, of certain written advertising matter, termed "write copy," to accompany the pictorial designs. This "write copy" is based upon information supplied by the subscriber upon a printed form furnished by the appellant and termed an "analysis." The subscriber is also permitted and encouraged to send in additional information from time to time for the purpose of enabling the appellant to prepare appropriate "write copy" during the term of the particular subscription.

Respondent, Monroe Street Lumber Company, is a Washington corporation, located in Spokane, and is engaged in the building supply and fuel business.

On October 6, 1945, one Leslie M. W. Neville, appellant's traveling solicitor and salesman, called upon the respondent and explained to Mr. H. O. Schumacher, president of the respondent company, the nature of the advertising service furnished by the appellant. The result of that confer-

ence was that Mr. Schumacher signed a printed agreement, furnished and filled in by the salesman, reading as follows:

"NORM ADVERTISING, INC.
79 Madison Avenue
New York, N. Y.

"Reserve for me *Fifty-two* copyrighted illustrations and write copy, both as you think best, and grant me the exclusive right to use same in advertising the *builders supply-Fuel* business in newspapers and other media of *Spokane* State of *Washington* only, during the term of this agreement and any renewal thereof. Ship *4* or *5* mats of the above illustrations monthly, F.O.B. New York, by mail, beginning as soon as possible. Size of mats to be about *1* or *2* columns wide.

"For the right to use the above illustrations and copy, I/we agree to pay you at New York the sum of *Three hundred and twelve* ............../100 (*$312.00*) Dollars yearly, payment for the first year to be made as follows: *Seventy-eight* ............../100 (*$78.00*) Dollars *10 days after date of 1st shipment, Twenty-six* ............../100 (*$26.00*) Dollars on the first of each month thereafter until the full amount above stated has been paid. I/we agree to reimburse you monthly for postage used in shipment.

"Fifteen days after failure to meet any of the payments due, the whole amount remaining unpaid shall become due and payable forthwith.

"The term of this agreement shall be for a period of ONE YEAR from date of first shipment, and shall continue in effect under the same terms and conditions as stated herein until I/We notify NORM ADVERTISING, INC., by registered mail to discontinue. Payments for any additional period shall be made monthly on the first of the month following date of shipment at the rate of one twelfth of the annual charge for the first year.

"NORM ADVERTISING, INC., agrees not to furnish advertising service to any one else engaged in the above business in the place or places designated above during the term of this agreement or any renewal thereof so long as there shall be no default by me/us and I/We agree that the use of the above illustrations and copy, or any part thereof, shall terminate with this agreement.

"I/We understand that I/We shall arrange for publication in newspapers and other media and pay the cost of same, and that NORM ADVERTISING, INC., assumes no responsibility for cost or rate of publication.

"Neither party will be held responsible for any provisions or representations not embodied in writing herein and this contract is not subject to cancellation. This agreement is subject to the acceptance of NORM ADVERTISING, INC., at New York.

"Dated *October 6, 1944*

               Name    Monroe Street Lumber Co.

               Per      H. O. Schumacher, Pres.

                                  (Official Title)

"Accepted at New York, N. Y.

  By Norm Advertising, Inc.

  Per Signa Ford

  Date October 9, 1944"

We have italicized those portions of the agreement which were filled in by the salesman.

As appears above, the agreement was signed by respondent through its president in Spokane, on October 6, 1944, and was accepted by the appellant in New York, on October 9th.

At the time of signing the agreement, Mr. Schumacher also signed and delivered to the salesman a complete "analysis" of respondent's business, for use by the appellant in preparing the "write copy" referred to above.

Appellant duly notified the respondent by mail from New York that it had accepted the contract and that the necessary advertising material would be sent forward as agreed.

Upon receipt of the first shipment of prepared mats, respondent refused to use or keep them, but immediately returned them to the appellant, with the statement that the service did not comply with the representations made by the salesman and that any further correspondence in reference to the matter should be conducted with respondent's attorney.

Respondent having refused to co-operate further in the performance of the contract or to pay any part of the contract price, appellant in February, 1945, instituted this action to recover the full amount provided for in the contract.

A preliminary question in the case is whether the contract should be construed according to the laws of the state of New York, as appellant contends, or according to the

laws of the state of Washington, as contended by the respondent.

As appears from the provisions of the contract itself, the instrument consisted of a written offer made by the respondent in the state of Washington and an acceptance thereof by the appellant in the state of New York; also, the advertising matter was to be shipped by the appellant to the respondent "F.O.B. New York"; and payments were to be made by the respondent to the appellant in that state.

■ The general rule is that a contract is considered as having been entered into at the place where the offer is accepted or where the last act necessary to a meeting of the minds or to complete the contract is performed. 17 C. J. S. 813, Contracts, § 356. Under that rule, the contract here involved must be considered as having been made in New York.

■ It is also the general rule that, in the absence of an agreement to the contrary, the law of the place where the contract is entered into controls the determination of the rights and liabilities of the parties. This court has recognized that general rule. *Carstens Packing Co. v. Southern Pac. Co.,* 58 Wash. 239, 108 Pac. 613, 27 L. R. A. (N.S.) 975; *Phoenix Packing Co. v. Humphrey-Ball Co.,* 58 Wash. 396, 108 Pac. 952. Under that rule, the law of New York, if properly shown, would determine the rights and liabilities of the parties to the present contract.

■ In this case, however, appellant neither pleaded nor proved the law of the state of New York. In such situation, it must be presumed that the law of that state is the same as that of this state. *Walnut Park Lbr. & Coal Co. v. Roane,* 171 Wash. 362, 17 P. (2d) 896; *In re Barclay's Estate,* 1 Wn. (2d) 82, 95 P. (2d) 393; *Smaby v. Shrauger,* 9 Wn. (2d) 691, 115 P. (2d) 967. While chapter 82, p. 204, Laws of 1941 (Rem. Supp. 1941, §§ 1278 to 1281), provides that the courts of this state shall take judicial notice of the constitution, common law, and statutes of every other state, nevertheless § 1281, *supra,* requires that such laws be pleaded, which was not done in this case.

In any event, the point raised is not material here, for, in our opinion, the law of New York upon the principal question in this case, hereinafter to be considered, is the same as the law of the state of Washington.

Before considering the principal question, however, we shall give attention to another point raised by the respondent. It contends that appellant cannot recover in this action because it was not shown that the pictorial illustrations furnished by the appellant were copyrighted.

Appellant's complaint pleaded the contract *in haec verba*, showing that respondent contracted for copyrighted illustrations, and then, in another paragraph, pleaded specifically that appellant had made the required initial shipment "in accordance with the agreement." In its answer, respondent did not deny any of the allegations of the complaint except those setting forth the indebtedness; nor, in any of its six affirmative defenses, did respondent raise any question whatever suggesting that the pictorial designs had not been copyrighted.

Upon the issues as framed, appellant's evidence was taken by deposition in New York. Its witnesses testified that the first shipment of pictorial illustrations sent to the respondent had been copyrighted, and that in fact all of the designs prepared by it were likewise legally protected.

When the depositions were introduced later at the trial, respondent's counsel raised an objection that the statements of the witnesses did not constitute the best evidence of copyrights and that the official copyright documents themselves should have been offered by the appellant in its depositions. Respondent also endeavored at the trial to amend orally its answer so as to include a denial of any possessory copyrights by the appellant.

Under the circumstances of this case, we think the objections and offer to amend came too late, and that the respondent is bound by the admissions of its original answer and its failure to raise opportunely an objection which the appellant might readily have met.

Approaching the principal question here involved, we proceed upon the theory that the written agreement

presented in this case was an executory contract, not an executed one. This view is contrary to the contention made by the appellant and accords with that made by the respondent. We act upon that theory, however, for the reason that the contract indicates, and the evidence of the appellant itself establishes, that the agreement contemplated not merely a license granted by the appellant to the respondent to use copyrighted mats or illustrations together with written advertisements, all previously prepared by the appellant, but also the future preparation and delivery by the appellant of certain advertising matter or "write copy," based upon respondent's original "analysis" and such subsequent information as the latter should from time to time supply. It was therefore not a contract solely for the granting of certain rights to use material already in existence, but a contract calling, in addition, for the future performance of certain personal services, requiring skill, on the part of the appellant during the prescribed term of the contract.

Our inquiry next centers upon the outcome of the contract. The complaint in the case alleged, and the evidence established, that respondent repudiated the contract. The trial court so held, and respondent does not dispute that fact. The case is therefore one of breach of contract, giving rise to an action for damages. As stated above, the appellant sued for the full amount stipulated in the contract. The trial court denied recovery on the ground that appellant had not alleged nor offered any proof of the damages sustained by it.

To state a cause of action *ex contractu*, it is sufficient if the complaint shows the making and existence of a valid and enforcible contract between the parties; the right of the plaintiff and the obligation of the defendant thereunder; a violation of the contract by the defendant; and the amount of damages resulting to the plaintiff therefrom. *Palmer v. Clark*, 52 Wash. 345, 100 Pac. 749; *Cruickshank v. Lich*, 158 Wash. 523, 291 Pac. 485; 17 C. J. S. 1154, Contracts, § 533; 41 Am. Jur. 356, 366, Pleadings, §§ 95, 110.

Although in its complaint appellant did not term the amount sued for as damages, it did allege specifically the amount which it was seeking to recover. In the words of the *Cruickshank* case, *supra,*

". . . the allegations [of the complaint] were sufficient to advise the appellants [defendants] of the nature and amount of the demand against them."

Under the foregoing rules, the complaint sufficiently stated a cause of action for damages resulting from the breach of the contract.

We come now to the principal question in the case, namely, the amount of damages which the appellant is entitled to recover upon the facts shown by the evidence.

By proving the contract price, the appellant made a *prima facie* case of the measure of its damages, and the burden then rested upon the respondent to show facts in mitigation of the damages claimed.

In *Star Pub. Co. v. Knosher & Co.,* 62 Wash. 215, 113 Pac. 569, suit was brought by a publishing company to recover the stipulated compensation provided for in a contract for advertising space in a newspaper. The evidence showed that after a certain date the advertisement was not published, because of the defendant's refusal to furnish the advertising material. The contentions made by the defendant in that case are similar to those made by the respondent here. Answering those contentions, this court said:

"The appellant [defendant] next suggests that, if it breached the contract, its liability is limited to the profit that would have resulted to the respondent [plaintiff] from its performance, and that, the respondent having failed to offer any evidence on that subject, the judgment should have been against it. This position is untenable, because the contract provides that, in default of payment as stipulated, the respondent 'may hold such space at advertiser's disposal for the full period fixed, notwithstanding such default in payment, and collect therefrom the full contract price;' or that, 'should the advertiser fail to furnish copy as provided in the contract, or should copy furnished not meet with the approval of the Star Publishing Company, the

Star Publishing Company may continue to charge for such space until new copy is furnished.' If any meaning is to be given to the clause last quoted, it becomes evident that the respondent reserved either of two options, viz., (1) to hold the space open, or (2) to utilize it for other purposes for the breach stated, and in either event to receive the compensation fixed by the contract. The parties themselves have fixed the damages in case of a breach of the terms of the contract, and it does not lie with the court to change or vary it."

Proceeding further, the court made this statement, which is particularly applicable here:

"However, if we should adopt the view that the profits of the contract are the measure of the appellant's liability, the burden would be upon it, as in contracts for personal services, to show the facts in mitigation of damages, upon the ground that *prima facie* the measure of damages is the contract price. *Ware Bros. Co. v. Cortland Cart & Carriage Co.*, 122 N. Y. 439, 85 N. E. 666; *McDermott v. De Meridor Co.*, (N. J.), 76 Atl. 331."

Accord: *Arkley Lbr. Co. v. Vincent,* 121 Wash. 512, 209 Pac. 690.

The rule thus expressed and adopted by this court is in harmony with the great weight of authority. In 134 A. L. R. 243, it is said:

"The overwhelming weight of authority is to the effect that in actions for damages arising out of either breach of contract or tort the burden is upon the party whose wrongful act caused the damages complained of to prove anything in diminution of the damages, or, in other words, that the damages were lessened or might have been lessened by reasonable diligence on the part of the aggrieved party."

See, also, 25 C. J. S. 791, Damages, § 144e; 15 Am. Jur. 770, Damages, § 331.

This same question was squarely decided in a case in which this present appellant brought suit upon a contract in substance identical with the one involved here. *Norm Co. v. Cumberland Coal Co.*, 53 R. I. 228, 165 Atl. 592. That was an action in *assumpsit* brought to recover for the breach of a contract wherein the defendants were given the exclusive right in certain territory to use a means of advertising

devised by the plaintiff. The price agreed upon was to be paid in monthly installments. The defendants did not use any of the mats supplied by the plaintiff but repudiated its agreement. The trial court directed the jury to return a verdict for the plaintiff in the full amount of the contract. On appeal, the only question involved was the measure of damages. In its opinion affirming the judgment entered, the supreme court of Rhode Island said:

"While it was the duty of the plaintiffs to minimize the damages, it is apparent that this could be done only by a re-sale of its services in the territory covered by the contract. The burden is on the defendants to show that the loss to the plaintiffs could have been reduced by such resale. *Brumbaugh System Inc. v. Providence Live Poultry Co.*, 47 R. I. 39. There was no error in the direction of a verdict for the plaintiffs."

We have exactly that situation in the instant case.

The judgment is reversed, and the cause will be remitted to the superior court for the entry of judgment for the full amount of damages as established by the appellant.

BEALS, C. J., MILLARD, SIMPSON, and MALLERY, JJ., concur.

_____

September 13, 1946. Petition for rehearing denied.