IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | |
| | ) | No. 37841-1-III |
| DERRICK BADGLEY, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| MICHELLE PAPPAS, | ) | |
| | ) | |
| Respondent. | ) | |

FEARING, J. — In this marital dissolution, husband Derrick Badgley assigns error

to the trial court's characterization of his Spokane Valley residence and an IRA account

as community-like property. He argues that, when characterizing the two assets as

community-like property, the dissolution court mistakenly concluded that the couple

engaged in a committed, intimate relationship before marriage because Idaho law does

not recognize such a relationship. Because Badgley failed to plead Idaho law and

neglected to sufficiently brief the question before the trial court, we decline to apply

Idaho law. We affirm the dissolution court's distribution of property.

FACTS

Derrick Badgley and Michelle Pappas formed their relationship in the neighboring

Gem State. The two began dating in August 2008, when Badgley lived in Lewiston,

Idaho and Pappas in Coeur d'Alene. They visited one another in the two cities. In

November 2008, Pappas briefly moved to California, though she returned to Idaho several times to visit Badgley. Pappas returned to live in Idaho in June 2009.

Late in the summer of 2009, Michelle Pappas moved into Derrick Badgley's Lewiston home. Pappas enrolled at the University of Idaho. Pappas did not pay rent. Badgley paid all of the couple's living expenses. The couple adopted a dog together and attended vacations and holidays with each other's families. The pair, however, maintained separate financial accounts and did not commingle funds.

Michelle Pappas contracted cancer. She stopped attending the University of Idaho and thereby lost the medical insurance available because of her matriculation. Derrick Badgley investigated adding her to his medical insurance plan. He discovered that, without being married, he could not add Pappas to the plan. As part of his research, Badgley learned that Idaho does not recognize common-law marriages.

While Michelle Pappas and Derrick Badgley cohabitated in Idaho, Pappas believed the pair would eventually wed. In December 2011, Derrick Badgley and Pappas became engaged to marry.

In August 2012, Derrick Badgley purchased a house in Spokane Valley. Michelle Pappas participated in the home search. She described the home as a "good common ground" between Badgley's preference for country living and her preference for city life. Report of Proceedings (RP) at 242. Badgley alone paid the down payment on the purchase of the residence. The deed to the home listed only Badgley's name. According

to Pappas, the two agreed to add her name on the residential title on marriage. Badgley and Pappas relocated to Spokane to live in the new house. Badgley never added Pappas' name to the residential title.

In April 2013, the pair ended their close relationship after Michelle Pappas revealed she wanted to move to Texas. As a result of the breakup, Derrick Badgley sought a new romantic relationship. But in June 2013, Pappas discovered she was pregnant with Badgley's son, and the pair reconciled. In July 2013, Pappas returned to the Spokane Valley home to reside with Badgley. The partners married in August 2014.

Derrick Badgley maintained an IRA account through Edward Jones. After changing employers in 2017, he rolled a 401(k) fund from his employer, Sherwin-Williams, into the Edward Jones account. Badgley withdrew funds from the IRA during the marriage.

## PROCEDURE

Derrick Badgley petitioned for marital dissolution in January 2019. His petition included no request for the application of Idaho law. In a trial brief, Badgley argued against the existence of a committed, intimate relationship, but, in forwarding this argument, he only analyzed Washington law. He did not request that the trial court apply Idaho law.

During opening statement at trial, Derrick Badgley's counsel commented, in part:

No. 37841-1-III
*In re Marriage of: Badgley & Pappas*

The history in this case and the facts will show that I kind of left the elephant in the room out of my opening brief. And I apologize for that. But I just—I realized as I was preparing for this that the parties lived in Idaho for the first few years, except eight months in Washington when they weren't married. And Idaho has done away with common law marriage; therefore, they've done away with CIRs [committed intimate relationships] completely or meretricious relationship cases because they—the factors in a CIR and a meretricious relationship and a common law marriage are exactly the same. And from the statutory common law factors over there at ICJI [Idaho Civil Jury Instruction] 911 and the case law in 2002, I have a case for the Court that indicates that it's no longer been the case since 1997.

RP at 8-9.

During the cross-examination of Derrick Badgley by Michelle Pappas' counsel,

the following colloquy ensued:

Q. And do you remember how you held her out when you introduced her to your family?
A. No.
Q. Okay. And then—
MR. STENZEL [Derrick Badgley's attorney]: Your Honor, I'm going to entertain an objection at this time. I'm really not sure where Mr. Dudley [Michelle Pappas' attorney] is going. I can voir dire counsel—the client and—they were living in Idaho at the time. There is no meretricious relationship or CIR in Idaho nor common law marriage. So I don't know how this is relevant.
MR. DUDLEY: Mr. Stenzel can do—could have done a summary judgment, if he wanted to, long ago. You don't get to show up at trial and try to prevent me from putting on my case.
MR. STENZEL: He can put on his case, Your Honor, but a summary judgment is optional because it is expensive, number 1; and number 2, you get issues decided sometimes that you don't want to before trial. And I am not even sure that—I said at the beginning, I said this was the elephant in the room that I missed. So as I'm talking—I can bring up the law even if it's the last day I find it out.

4

If there was no common law marriage in Idaho and no CIR and no meretricious relationship, then how could that even be relevant to what we're doing here under the conflict-of-law theory?

MR. DUDLEY: Well, you would have to invoke a choice of law. You would have had to do that. It would be as if someone lived in a noncommunity property state and brought property here to a community property state.

MR. STENZEL: Sure.

MR. DUDLEY: And so I believe I get to put on my case. And it's listed as a disputed issue. You don't get to—so . . .

MR. STENZEL: He can put that they didn't get a treasure, but if they start talking about treasure hunting, they didn't do any treasure hunting, treasure trove, then it's irrelevant. You know, he can put it in there and he won't sign it unless it's in there. Then we deal with it and deal with it here. And that's—we do it by objection. So my concern is where are we going with this.

THE COURT: Okay. I'm going to overrule the objection.

RP at 125-26.

During the cross-examination of Michelle Pappas, her counsel commented:

THE COURT: Mr. Dudley?

MR. DUDLEY: Mr. Stenzel is always fond of saying a phrase called "case law," but he never actually gives you a case. He's just sort of throwing things out for the sake of—

THE REPORTER: I'm sorry, you need to slow down, please.

MR. DUDLEY: What you will find is that Mr. Stenzel throws out this phrase called "case law" but actually then doesn't give you any case law.

RP at 255.

During the closing argument of Derrick Badgley's counsel, counsel remarked:

So I'm also going to talk about the CIR and some of the other things when we deal with the—this issue of maintenance, because CIR does not allow—and it's a very common law—doesn't allow maintenance or attorney's fees to be paid. So if we consider even their argument may be

5

even close to true, that you consider the Idaho time, which I'll talk about in a minute, in terms of the longevity of the relationship.

RP at 314. Badgley's attorney added:

> Well, they lived in a state that didn't have common law marriage. But in 1997, based on the case that I—that I cited to the Court, or at least dealt with, says that, in fact, there is no common law marriage there. So basically they were in what we used to call a shacking-up relationship. No disrespect for that. That's what I used to call it. Or they lived together. And that does not equate to the time under a CIR. They were in a state that didn't recognize that.
>
> You can't take Washington law and impute that law to nonresidents.
>
> You can't take it clear over to Idaho. They couldn't use Washington law over there. They can't take that in Idaho, you know, and say—and turn that into a CIR. That's not how it works. If they had common law marriage there, you could take that and use it over here. And I'm sure that Mr. Dudley would. He would catch that. He's a very smart attorney. He would have caught that.
>
> Well, the conflict of law indicates very clearly that there is no CIR over there, because if they did, I would—I would—I cited to, I believe, the code in Idaho that specifically indicates that the factors to consider in a common law are almost identical to the factors to get a CIR here. And so if that wasn't there and it was not available anymore, you can't impute those factors just because they were living together.
>
> Now, there is a case that says that she doesn't have to plead a CIR to argue it at the time of the dissolution. I know that. Well, then let's look at the time they were here. Is that enough time to make a CIR in this case? No, I don't think so. They were here approximately—well, what, less than a year under Washington law in that relationship. Now, the Court can consider that and maybe make their length of their relationship longer for some equities, but it would only make this marriage relationship about a five-year marriage. It's still a very short marriage. If it was ten years or eight years, then I think it's different.
>
> But the *Fregeau* [*In re Long and Fregeau*, 158 Wn. App. 919, 244 P.3d 26 (2010)] case was very clear that, if it had been less than that, there might be a problem in terms of defining a CIR in that particular relationship at six and eight years.

6

RP at 318-20.

After trial, the dissolution court concluded that Derrick Badgley and Michelle Pappas entered a committed intimate relationship beginning in June 2009 while residing in Idaho. Washington law permits a court to equitably divide community-like property between partners in a committed intimate relationship. The trial court applied Washington law and determined the Spokane Valley home to be community-like property subject to equitable division. The court ordered Badgley to pay Michelle Pappas $75,000, which represented half of the equity in the home.

The dissolution court also ordered Derrick Badgley to pay Michelle Pappas $41,500 for her interest in the Edward Jones IRA. The court based this amount on half of the value of the IRA as of October 2019. Badgley testified that he had access to monthly IRA statements online, but he produced no records as to the value of the IRA before the parties' separation. While noting the uncertainty of the value of the IRA at relevant times and while recognizing that Badgley occasionally withdrew funds from the IRA during the marriage, the court applied a presumption of community-like property.

## LAW AND ANALYSIS

In his brief, Derrick Badgley writes that, before he and Michelle Pappas entered a relationship, Idaho abrogated common law marriage laws. Accordingly, Idaho did not recognize committed intimate relationships or equitable interests in the other partner's property. Badgley emphasizes that he testified, at trial, to his knowledge that Idaho had

7

rejected common law marriage and that Pappas never denied she knew about Idaho's law.

Nevertheless, Badgley fails to isolate in his appellate brief whether and where in the

record he forwarded to the dissolution court citations for Idaho law. More importantly,

Badgley never pled, in his dissolution petition, the applicability of Idaho law. Badgley

argued in his trial brief against the existence of a committed, intimate relationship, but, in

forwarding this argument, he only analyzed Washington law. Therefore, we decline to

entertain Badgley's assignment of error to the dissolution court's application of

Washington, not Idaho, law.

## RAP 2.5(a)

An appellate rule, a superior court rule, and a Washington statute compel us to

demur from Derrick Badgley's assignment of error. The first sentence of RAP 2.5(a)

declares:

> *Errors Raised for First Time on Review.* The appellate court may
> refuse to review any claim of error which was not raised in the trial court.

(Emphasis added.) (boldface omitted). Accordingly, a party may generally not raise a

new argument on appeal that the party did not present to the trial court. *In re Detention*

*of Ambers*, 160 Wn.2d 543, 557 n.6, 158 P.3d 1144 (2007). A party must inform the trial

court of the rules of law it wishes the court to apply. *Smith v. Shannon*, 100 Wn.2d 26,

37, 666 P.2d 351 (1983); *State v. Lazcano*, 188 Wn. App. 338, 355, 354 P.3d 233 (2015).

In addition to raising an argument before the dissolution court in order to preserve error on appeal, the appellant must have raised the argument timely and effectively. Our refusal to review unpreserved errors encourages parties to make timely and well-stated objections. *State v. Richardson*, 12 Wn. App. 2d 657, 666, 459 P.3d 330 (2020). We may decline to consider an issue inadequately argued below. *International Association of Fire Fighters, Local 46 v. City of Everett*, 146 Wn.2d 29, 36-37, 42 P.3d 1265 (2002). To be adequate for appellate review, the argument should be more than fleeting. *State v. Lazcano*, 188 Wn. App. 338, 355 (2015). This court will not consider an issue in the absence of "adequate argument." *Amalgamated Transit Union Local 587 v. State*, 142 Wn.2d 183, 203, 11 P.3d 762, 27 P.3d 608 (2000).

No procedural principle is more familiar than a right of any sort may be forfeited by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it. *United States v. Olano*, 507 U.S. 725, 731, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993); *Yakus v. United States*, 321 U.S. 414, 444, 64 S. Ct. 660, 88 L. Ed. 834 (1944). RAP 2.5(a) affords the trial court an opportunity to rule correctly on a matter before it can be presented on appeal. *State v. Strine*, 176 Wn.2d 742, 749, 293 P.3d 1177 (2013). The rule serves the goal of judicial economy by enabling trial courts to correct mistakes and thereby obviate the needless expense of appellate review and further trials, facilitates appellate review by ensuring that a complete record of the issues will be available, and prevents adversarial unfairness by ensuring that the prevailing party is not

deprived of victory by claimed errors that he had no opportunity to address. *State v. Strine*, 176 Wn.2d 742, 749-50 (2013); *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988).

Derrick Badgley gave no notice to the dissolution court or the opposing party of his request for the application of Idaho law until his opening statement at trial. During the trial, Badgley referenced Idaho case law and an Idaho statute, but he never presented a citation to a statute or Idaho decision. During his opening statement, Badgley referenced I.C.J.I. 911. In our limited research of Idaho law, we learned that the reference refers to a jury instruction, not a statute or decision. In short, Badgley did not timely or adequately argue that Idaho should control. He failed to identify relevant Idaho law, afford the dissolution court an opportunity to review Idaho law, and offer the opposing party a meaningful occasion to respond.

## CR 9(k)

The rule of waiver with regard to contentions never timely and sufficiently forwarded before the trial court applies with added force in Derrick Badgley's appeal because of a Superior Court Civil Rule addressing foreign law. CR 9(k) declares, in relevant part:

> Foreign Law.
> (1) *United States Jurisdictions*. A party who intends to raise an issue concerning the law of a state, territory, or other jurisdiction of the United States shall set forth in the party's pleading facts which show that the law of another United States jurisdiction may be applicable, or shall state in the

> party's pleading or serve other reasonable written notice that the law of another United States jurisdiction may be relied upon.
>
>     . . . .
>
>     (4) *Failure to Plead Foreign Law*. If no party has requested in pleadings application of the law of a jurisdiction other than a state, territory or other jurisdiction of the United States, the court at time of trial shall apply the law of the State of Washington unless such application would result in manifest injustice.

(Boldface omitted.) A related statute, RCW 5.24.040 reads:

> This chapter shall not be construed to relieve any party of the duty of hereafter pleading such laws where required under the law and practice of this state.

A party who wishes to rely on a foreign country's law must give notice in his pleading of the foreign jurisdiction whose law he contends may be applicable to the facts of the case. *Mulcahy v. Farmers Insurance Co. of Washington*, 152 Wn.2d 92, 98, 95 P.3d 313 (2004); *State v. Collins*, 69 Wash. 268, 273, 124 P. 903 (1912). CR 9(k) serves to put one's opponent and the court on notice of the applicability of foreign law. *Rodriguez v. Travelers Insurance Co.*, 54 Wn. App. 725, 728, 775 P.2d 973 (1989); *Byrne v. Cooper*, 11 Wn. App. 549, 551, 523 P.2d 1216 (1974).

The pleading of foreign law should state in substance foreign law relied on and inform the opposing party of the basis in foreign law for the claim or defense raised. *Byrne v. Cooper*, 11 Wn. App. 549, 551 (1974) (trial court applied English law). The pleading should quote the applicable foreign statutes with their citations. *Byrne v. Cooper*, 11 Wn. App. 549, 551 (1974); *Lowry v. Moore*, 16 Wash. 476, 479, 48 P. 238

(1897). The pleading should concisely recapitulate decisional foreign law. *Byrne v. Cooper*, 11 Wn. App. at 551.

*Mulcahy v. Farmers Insurance Co. of Washington*, 152 Wn.2d 92 (2004) illustrates proper reliance on the law of another jurisdiction. In her complaint, Mary Mulcahy notified Farmers and the court that Farmers reduced her tort payment by Can$150,000 pursuant to British Columbia law. Mulcahy cited to and provided the court and Farmers with copies of the foreign statutes, regulations, and cases upon which she relied. The Supreme Court held that Mulcahy had met the requirements of CR 9(k)(2) and satisfactorily pleaded foreign law.

On other occasions, Washington appellate courts have ruled that trial court was required to apply Washington law because neither party pled the content of another state's law even when a contract read that the law of another state controlled the terms and operation of a contract. *Granite Equipment Leasing Corp. v. Hutton*, 84 Wn.2d 320, 324, 525 P.2d 223 (1974); *Norm Advertising, Inc. v. Monroe Street Lumber Co.*, 25 Wn.2d 391, 396, 171 P.2d 177 (1946); *McDaniel v. Pressler*, 3 Wash. 636, 639, 29 P. 209 (1892). The same rule applies even if a tort, such as an automobile accident, occurred in another state. *Nissen v. Gatlin*, 60 Wn.2d 259, 261, 373 P.2d 491 (1962). When one or more of the parties fails to specifically plead the law of another State, the trial court must assume that the law of the other state reads identically to the law of the State of Washington. *Granite Equipment Leasing Corp. v. Hutton*, 84 Wn.2d 320, 324

12

(1974); *Chandler v. Doran Co.*, 44 Wn.2d 396, 400, 267 P.2d 907 (1954); *Nissen v. Gatlin*, 60 Wn.2d 259, 261 (1962); *Allen v. Saccomanno*, 40 Wn.2d 283, 285, 242 P.2d 747 (1952); *Norm Advertising, Inc. v. Monroe Street Lumber Co.*, 25 Wn.2d 391, 396 (1946).

In *Nissen v. Gatlin*, 60 Wn.2d 259 (1962), the Supreme Court effectuated Washington's rules of the road, despite the motor accident occurring in Ketchikan, Alaska. In *Allen v. Saccomanno*, 40 Wn.2d 283 (1952), the court applied Washington law to an Idaho accident even though a party cited an Idaho statute, because the party failed to cite Idaho decision law interpreting the statute. In *In re Adoption of Candell*, 54 Wn.2d 276, 340 P.2d 173 (1959), the Supreme Court applied Washington law to a Colorado divorce decree because neither party cited Colorado law. In *Byrne v. Cooper*, 11 Wn. App. 549 (1974), this court reversed the trial court's application of foreign law in favor of a summary judgment motion, when the moving party failed to cite to the foreign law until the time of the motion.

Our inundation of Washington case law, together with the language of CR 9(k) and RCW 5.24.040, demanded that Derrick Badgley specifically cite, in his complaint, any Idaho statute and decisional law, on which he sought to rely. Informing the dissolution court, during opening statement, that some unidentified Idaho law prohibited a committed, intimate relationship did not suffice. Therefore, the dissolution court could

assume that Idaho law read similarly to Washington law in terms of a romantic relationship.

Derrick Badgley does not argue, on appeal, that, even under Washington law, the parties did not enter a committed, intimate relationship. Nor does he argue that, assuming the parties entered such a relationship, the dissolution court mischaracterized and inequitably allocated the parties' property. Therefore, we end our analysis.

CONCLUSION

We affirm the dissolution court's distribution of property between Derrick Badgley and Michelle Pappas.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Pennell, J.

_____
Staab, J.

14